Case No. 25-30088

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

IN RE: **GARY WESTCOTT**, SECRETARY, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; AND **DARREL VANNOY**, WARDEN, LOUISIANA STATE PENITENTIARY, IN HIS OFFICIAL CAPACITY,
                                        *Petitioners*

Mandamus action from Case No. 3:12-cv-796, Middle District of Louisiana

---

## OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

---

Cecelia Trenticosta Kappel
Loyola Center for Social Justice
7214 St. Charles Ave. Box 907
New Orleans, LA 70118
Tel: 504-861-5735
Email: ctkappel@defendla.org

Counsel for Respondents

1

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.

| Parties | Counsel and Law Firms |
|---|---|
| Jessie Hoffman | Promise of Justice Initiative |
| Nathanial Code | Samantha Bosalavage Pourciau |
| Todd Wessinger | Center for Social Justice |
| Daniel Irish | Cecelia Trenticosta Kappel |
| Daniel Blank | Office of the Federal Public Defender |
| James Tyler | Letty S. Di Giulio |
| Anthony Bell | Shows, Cali, & Walsh, LLP |
| Jason Reeves | Jefrey K. Cody |
| Willie Tart | Caroline M Tomeny |
| Henri Broadway | Louisiana Department of Public Safety & |
| **Plaintiffs – Respondents** | Corrections |
|  | Jonathan R. Vining |
| Gary Westcott | Louisiana's Office of the Attorney General |
| Darrel Vannoy |  |
| Maghen Shipley |  |
| Elizabeth Baker Murrill |  |
| **Defendants – Petitioners** |  |

/s/ *Cecelia Trenticosta Kappel*
Cecelia Trenticosta Kappel, La. Bar No. 32736

*Attorney of Record*
*for Respondents*

February 24, 2025

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................2

TABLE OF CONTENTS ..................................................................................3

TABLE OF AUTHORITIES .............................................................................4

OPPOSITION TO PETITION FOR WRIT OF MANDAMUS .........................6

   I.     Factual Background .............................................................................6

   II.    The Petitioners Have Not Met the Mandamus Standard.....................11

   III.  The District Court Properly Exercised its Discretion in Granting the Rule 60(b)(6) Motion.......................................................................13

      A.   The Original Lawsuit is not Moot ................................................13

      B.   Extraordinary Circumstances are Shown by the Sudden Rush to Execute Mr. Hoffman by a New and Undisclosed Gas Protocol...............17

   IV.  Mandamus is Not Appropriate Under these Circumstances. ...............21

CONCLUSION............................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Booker v. Singletary*, 90 F.3d 440 (11th Cir. 1996) ................................................17

*Buck v. Davis*, 580 U.S. 100 (2017)........................................................................18

*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004)....................................................12

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019)..................................................19

*Freedom From Religion Found., Inc. v. Abbott*, 58 F. 4th 824 (5th Cir. 2023) 16, 17

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ...............................................................20

*Hernandez v. Thaler*, 630 F.3d 420 (5th Cir.) .........................................................19

*Hesling v. CSX Transp., Inc*., 396 F.3d 632 (5th Cir. 2005) ...................................20

*Hess v. Cockrell*, 281 F.3d 212 (5th Cir. 2002) .......................................................19

*In re Occidental Petroleum Corp*., 217 F.3d 293 (5th Cir. 2000) ...........................12

*Kerr v. U.S. Dist. Court*, 426 U.S. 394 (1976) ........................................................12

*Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847 (1988).......................18

*O'Bryan v. Estelle*, 691 F.2d 706 (5th Cir. 1982)....................................................20

*Plekowski v. Ralston-Purina Co*., 557 F.2d 1218 (5th Cir. 1977)...........................12

*Schlagenhauf v. Holder*, 379 U.S. 104 (1964)...........................................................6

*Shaw v. Martin*, 613 F.2d 487 (4th Cir. 1980)........................................................20

*Su v. Wilmington Tr., Nat'l Ass'n*, 839 F. App'x 884 (5th Cir. 2021)....................19

*U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334 (5th Cir. 2005) ......19

*United States v. Unknown (In re Unknown)*, 701 F.3d 749 (5th Cir. 2012)............12

*Williams v. State of Georgia*, 349 U.S. 375 (1955) ................................................20

**Statutes**

42 U.S.C. § 1983 ........................................................................... 14, 21

La. R.S. § 15:569 ................................................................. 7, 10, 14, 17

La. R.S. § 15:570 ............................................................. 10, 14, 16, 17

## OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

The Petitioners move this Court to take the extraordinary measure of granting a writ of mandamus under circumstances clearly not warranting such drastic action. Because the writ may be issued only where there is an "'usurpation of judicial power' or a clear abuse of discretion,"[1] it is unavailable in this case where the district court, familiar with the facts and background of the case, applied the correct law to the facts presented to it and reopened the proceedings. Even if the writ were available, the Petitioners have failed to establish grounds for its issuance. Critically, the Petitioners have failed to show any prejudice that would befall them should this lawsuit be allowed to proceed as opposed to forcing Mr. Hoffman to file a new complaint. Mandamus is not appropriate in these circumstances.

## I.    Factual Background

As of December 20, 2012, when Plaintiff Jessie Hoffman initiated the underlying litigation, the Petitioners had refused to disclose the Louisiana execution protocol to Mr. Hoffman or any other inmate under threat of execution, citing "security" concerns. After the prison rejected his request for a copy of the execution protocol, Mr. Hoffman asserted a Due Process right to notice of the protocol by

---

[1] *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964).

which he was to be put to death as well as a threatened Eighth Amendment violation based upon the last-disclosed protocol or the apparent lack of protocol.

At the time of filing, Louisiana law provided that "[e]very sentence of death executed on or after September 15, 1991, shall be by lethal injection; that is, by the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. § 15:569(B) (West 2024 (effect. 8/15/2015)). The Department of Public Safety and Corrections (DPSC) ultimately disclosed several versions of its execution protocol, revealing that the protocol was in a state of constant flux. *See*, *e.g.*, Dist. Ct. ECFs 137, at 4-5; 169-1, at 4-5. Even the last-disclosed version, dated March of 2014, was revealed to have "placeholders" and was not yet finalized. Dist. Ct. ECF 166-1 at 8.

Based on the execution protocols disclosed by the State, Mr. Hoffman argued, among other things, that he was at a substantial risk of suffering a lingering or unnecessarily painful death due to the nature of the lethal injection drugs to be used in executions, and that the execution protocol did not adequately protect him from cruel and unusual punishment due to the insufficient training, expertise, and supervision of those involved in the administration of the lethal drug. *See generally,* Dist. Ct. ECF 118.

On May 7, 2014, the parties agreed to stay the proceedings and that the Defendants would not carry out any executions of any of the Plaintiffs during the

pendency of the stay, and that the stay would not be construed as dilatory. Dist. Ct. ECF 178. The DPSC filed unopposed motions to continue the stay, asserting that "the facts and issues that are involved in this proceeding continue to be in a fluid state." Dist. Ct. ECF 181, 187, 196, 226.[2]

On August 12, 2021, Defendants filed a Motion to Dismiss contending that the DPSC "ha[d] no ability to obtain the lethal injection drugs authorized by [the DOC's] current protocol nor any other potential lethal injection drugs in the foreseeable future." Dist. Ct. ECF 263-1, at 4. The Defendants asserted that Plaintiffs had no standing to challenge Louisiana's method of execution because none were "presently threatened with any certainly impending injury." Dist. Ct. ECF 263-1, at 4. In support of that contention, Defendants submitted the affidavits of Secretary James LeBlanc and Seth Smith, Chief of Operations. Dist. Ct. ECFs 263-2, & 263-3. During jurisdictional discovery, COO Smith testified in his deposition that he was unable to obtain drugs for use in executions because pharmacies were concerned about "public disclosure laws." Dist. Ct. ECF 305-4 at 44. Secretary Leblanc testified that "the way to move forward with executions in Louisiana is legislatively." Dist. Ct. ECF 312, at 11.

---

[2] Plaintiff also filed an unopposed motion to continue the stay. Dist. Ct. ECF 215.

Although Plaintiffs opposed dismissal, warning that the Defendants were "playing a dangerous game" by attempting to have the suit dismissed based on a claimed inability to execute while at the same time refusing to enter into a stay of executions, the District Court dismissed the suit without prejudice. Dist. Ct. ECF 312. Because of the unavailability of lethal injection drugs, and lethal injection being the only legal method to perform an execution at that time, the District Court determined that "Defendants are no longer engaging in the behavior the Plaintiffs have deemed unconstitutional in their lawsuit allegations," and, "[t]here being no live controversy," the District Court found that it "lacks subject-matter jurisdiction." Dist. Ct. ECF 312, at 22-23. The District Court reasoned that "the Secretary may only "cause the execution of the condemned *as provided by law*," *id.* at 19 (emphasis in original), and questioned how it would "meaningfully evaluate whether Defendants' execution protocol violates the Plaintiffs' constitutional rights if no party to this suit even knows how, when, or if any Louisiana death row inmate will be executed?" The District Court concluded by advising that "[i]f a live controversy re-emerges, Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief they desire." *Id.* at 21.

Plaintiffs filed a Motion for Reconsideration (Dist. Ct. ECF 315) which was denied by the District Court. Dist. Ct. ECF 317. In that Ruling, the District Court addressed Plaintiff's argument that reconsideration was warranted due to a recent

press release from then Attorney General Jeff Landry, in which he contended that it was the Plaintiffs' lawsuit that was "preventing executions and not the state's inability to procure the drugs." *Id.* at 4. The District Court found that the Attorney General's opinion to the media did not amount to "newly discovered evidence." *Id.* at 3-4. The District Court, however, noted that "[i]f Attorney General Landry is somehow successful in the future at accomplishing that which has yet to be accomplished by the legislature – an alternative means of execution in Louisiana, Plaintiffs and Defendants will have an entirely different execution protocol over which to litigate." *Id.* at 4.

Plaintiff Hoffman relied on the District Court's dismissal of his suit without prejudice to indicate his ability to reopen the proceedings if and when new legislation is passed, a new protocol is finalized, and/or execution warrants are signed. All three of these scenarios have now come to pass. First, the Louisiana Legislature passed Act 5 of the Second Extraordinary Session of 2024, amending La. R.S. § 15:569-70 to add two new methods of execution in addition to lethal injection – nitrogen gas and electrocution – effective July 1, 2024. La. R.S. § 15:569 (West 2024 (effect. 7/1/24)). The amendments also included new secrecy provisions to conceal the identities of any individuals or entities involved in executions. La. R.S. § 15:570(G) (West 2024).

Based on the change in the law that would lead to the state's newfound ability to execute the Plaintiffs, Plaintiffs filed a Motion under Rule 60(b)(6) seeking to reopen the proceedings prior to the effective date of Act 5, on June 14, 2024. Defendants' opposition to the Rule 60(b)(6) motion acknowledged that "the 2014 Protocol is still on the books," but argued that:

> [T]he underlying legislation has changed, and the protocol must change along with it. Developing a new protocol, of course, takes time. So until that happens, there are no procedures for carrying out executions under the new law, and so no procedures for Plaintiffs to challenge.

Dist. Ct. ECF 327, at 2.

Months later, on February 10, 2025, Governor Landry announced that the DPSC had finalized and implemented an updated protocol that allows for nitrogen gas executions. Concurrent with the Governor's announcement, district attorneys around the state began requesting warrants of execution. Three warrants of execution were issued within 48 hours, placing Plaintiffs' lives in jeopardy. Dist. Ct. ECFs 331-8, 331-7, 336-3. Based on the extraordinary change in circumstances, Plaintiffs filed emergency supplements alerting the District Court and requesting an expedited ruling on the Rule 60(b)(6) motion, on February 10 and 14, 2025. Dist. Ct. ECFs 331 & 336. Plaintiffs thus diligently moved to reopen the proceedings prior to the change in the law, as soon as a justiciable controversy re-emerged.

## II.     The Petitioners Have Not Met the Mandamus Standard

The Petitioners ask this Court to take an extraordinary measure to reverse the district court's reasoned and appropriate decision vacating dismissal and allowing this suit to proceed. Even a showing of error is insufficient to justify mandamus—Petitioners must show "clear and indisputable" error that "is irremediable on ordinary appeal." *In re Occidental Petroleum Corp*., 217 F.3d 293, 295 (5th Cir. 2000). This Court, sitting en banc, has provided extensive guidance on the circumstances meriting issuance of a writ of mandamus:

> The Supreme Court has explained that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976); *accord Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). "[T]he writ has traditionally been used in the federal courts only . . . to compel it to exercise its authority when it is its duty to do so." *Kerr*, 426 U.S. at 402 (quotation marks omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *Id.* (quotation marks omitted). Mandamus traditionally "is not to be used as a substitute for an appeal, or to control the decision of the trial court in discretionary matters." *Plekowski v. Ralston-Purina Co*., 557 F.2d 1218, 1220 (5th Cir. 1977).

*United States v. Unknown (In re Unknown)*, 701 F.3d 749, 757 (5th Cir. 2012) (en banc). This Court also reiterated the three-part test for assessing whether extraordinary relief is warranted. "Under our traditional mandamus inquiry, we will grant [a] petition for mandamus if (1) [petitioner] has no other adequate means to attain the desired relief; (2) [petitioner] has demonstrated a clear and indisputable right to the issuance of a writ; and (3) in the exercise of our discretion, we are satisfied that the writ is appropriate in these circumstances." *Id.* at 773. The District

12

Court's order in this case falls below the very high bar for the issuance of a writ of mandamus.

## III. The District Court Properly Exercised its Discretion in Granting the Rule 60(b)(6) Motion

### A. The Original Lawsuit is not Moot

This lawsuit was originally brought to challenge the state's execution protocol, the lack thereof, and/or the denial of notice of the execution protocol. Jessie Hoffman brought this suit after he had been denied access to the state's protocol. At that time, the state had been using lethal injection as its method of execution for nearly two decades. Now, Mr. Hoffman is in an even worse position. He had no notice as to even the method of execution until February 20, at which point he was told simply that he would be executed by nitrogen gas. He is set to be the first person Louisiana executes using this new method, which was passed into law less than a year ago.

Mr. Hoffman initially filed this lawsuit on December 20, 2012, after repeated requests for disclosure of the state's execution protocol were denied. Counsel for Mr. Hoffman had filed a public records request on July 19, 2012, which included a request for all documents pertaining to the DPSC's execution protocol. On August 22, 2013, DPSC responded, refusing to disclose the protocol due to "security" concerns. Mr. Hoffman submitted a request for Administrative Remedy Procedure with the DPSC requesting a copy of the protocol the DPSC would use to execute

him, which was accepted in Angola's system on September 28, 2012. On December 6, 2012, the DPSC rejected his request, and stated to Mr. Hoffman that "the issue in your ARP has not happened to you as of the date in your complaint." Mr. Hoffman filed a suit under 42 U.S.C. § 1983 on December 20, 2012, asserting, *inter alia*, that the DPSC was violating his rights under the Eighth and Fourteenth Amendments by refusing to give him notice and opportunity to be heard regarding how he would be executed, causing a serious risk of substantial harm. At that time, Mr. Hoffman knew that the method would be lethal injection, but had no notice of the execution protocol.[3]

As of today, twenty-two days before Mr. Hoffman is scheduled to be executed, he is in the same position he was in 2012. As soon as possible after the state sought a warrant in his case, Mr. Hoffman filed an Emergency Request for Administrative Remedy on February 11, requesting, inter alia, a copy of the DPSC's execution protocol. The prison informed Mr. Hoffman that he would receive a response within 40 days. On February 14, counsel for Mr. Hoffman asked counsel

---

[3] It should be noted that lethal injection is still a legal method of execution, and there has been no indication that the last disclosed lethal injection protocol has been revoked. As Representative Muscarello, the author of House Bill 6, which would become Act 5, testified, "we haven't performed an execution in close to 20 years . . . because we don't have this [secrecy] law." *See* Dist. Ct. ECF 318-1 at 6. But, the State now has Act 5, which was intended to open up new sources of lethal injection drugs under the cover of secrecy. La. R.S. §§ 15:569-70 (West 2024) (eff. 7/1/2024).

for the DPSC whether the DPSC had changed its protocol and if DPSC had drugs in stock intended for executions, but counsel for the DPSC refused, claiming that the execution protocol is exempt from the Public Records Act. Eight days after Mr. Hoffman's warrant was issued, the DPSC gave him notice for the first time on February 20, 2025 that he would be executed by nitrogen gas.

The Petitioners contend that "Plaintiffs have refused to file a new lawsuit challenging the new statute," and have "opted not to file a new lawsuit," however, this lawsuit has never been limited to challenging the statute itself; it has always been about challenging the specific statutory method selected and the protocol adopted to implement it. For years, the Defendants acknowledged that the protocol was "**in a fluid state**." Dist. Ct. ECFs 196 & 226. Even after the new law went into effect, Defendants asserted that any challenge was "**premature**" because "**the protocol must change**" and "**there are no procedures for carrying out executions** under the new law." Dist. Ct. ECF 327, at 2, 11. The Defendants claimed that there were "**no procedures for Plaintiffs to challenge**." *Id*.

Now that there is a procedure to challenge, Plaintiff has attempted to follow the guidance in the District Court's decisions and reopen the proceedings. This is not about any "strategic decision;" this was about waiting for the District Court to rule on the pending motion to reopen the proceedings, which would save the vast amount of resources required to start a new lawsuit. Once the Governor announced

a new protocol, Plaintiffs immediately brought that fact to the District Court's attention. Dist. Ct. ECF 331. Had the Rule 60(b)(6) Motion been denied at that point, Plaintiffs would have immediately filed a new lawsuit. However, Plaintiffs relied upon the District Court's rulings that, should "a live controversy re-emerge[], Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief they desire." Dist. Ct. ECF 312, at 21.The Petitioners' citation to *Freedom From Religion Found., Inc. v. Abbott*, 58 F. 4th 824, 832 (5th Cir. 2023), for the argument that Plaintiffs' claims remain moot simply because Louisiana has amended La. R.S. §§ 15:569-70 is misplaced and wrong. In *Freedom From Religion Foundation*, the Texas Reservation Board issued a regulation known as the Capital Exhibit Rule that permitted members of the public to submit exhibits for display on the Texas capital grounds. *Freedom*, 58 F.4th at 827. In 2015, Texas' Governor ordered the removal of an exhibit submitted by members of the Freedom organization. *Id.* at 827-28. Members of the Freedom organization appealed claiming that the removal violated their First Amendment rights. *Id.* at 828. While on appeal, the Board repealed the Capital Exhibit Rule, such that the permanent injunctive relief that the Freedom organization sought was no longer available, and therefore the Freedom organization lacked a cognizable interest in the outcome of the case, rendering the case moot. *Id.* at 828, 831. The collection of cases cited in *Freedom* also resulted in situations where courts have found actions to be moot

because a statute, regulation, or rule was repealed or amended to remove the complained of defect. *Id.* at 832.

The current situation is quite different from all of these cases. Act 5 did not repeal execution by lethal injection in Louisiana—rather it strengthened it to "ensure absolute confidentiality of the identifying information of any person, business, organizations, or other entity directly or indirectly involved in the execution of a death sentence," not to mention adding additional methods of execution that do not require drugs. Act 5 (La. R.S. §§ 15:569-70 (West 2024) (eff. 7/1/2024)). Ultimately, nothing in the amended statute granted the declaratory and injunctive relief requested by Plaintiffs, namely preventing the Defendants from violating Plaintiffs' "rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and to equal protection of law." Dist. Ct. ECF 253 at 37.

## B. Extraordinary Circumstances are Shown by the Sudden Rush to Execute Mr. Hoffman by a New and Undisclosed Gas Protocol

Whether there are "sufficiently extraordinary" circumstances is within "the district court's sound discretion." *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996) (quotation omitted). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in the appropriate case, "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64

(1988)). Additionally, the Rule 60(b)(6) motion "must have been made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Although the Petitioners complained initially that the 60(b)(6) Motion was "premature," the circumstances changed in an extraordinary way on February 10, when Governor Landry announced a new protocol by which to execute Plaintiffs. The culmination of three factors have resulted in the required extraordinary circumstances: (1) the amendment to La. R.S. §§ 15:569-70 adding new methods of execution and secrecy; (2) the Governor's announcement that the DPSC had finalized a new protocol for gassing executions; and (3) the issuance of an execution warrant for Mr. Hoffman for March 18, 2025. The circumstances prompting the District Court's order reopening the case were not about a change in the decisional law, as is the case for all the cases Petitioners cite. This case is a change in the legislation—which still retains lethal injection as a possible method—as well as a change in the ripeness of the challenge to the protocol based on the Governor's announcement of a finalized gassing protocol and an execution warrant for Mr. Hoffman. DPSC officials were clear during the pendency of the Defendants' Motion to Dismiss that not only could they not execute anyone using lethal injection, but they could not conduct any executions, period. *See* Dist. Ct. ECFs 305-10 at 3-6, 305-11, 305-12; Dist. Ct. ECF 305-6 at 15 (Deposition of Mary Labatut Tr. at 26:4-5) ("I am totally out of the execution business. Totally out of it, totally out of it.").

Extraordinary circumstances are shown when the State's ability to execute Mr. Hoffman goes from zero to one hundred overnight.

Critically, this case was dismissed *without prejudice*. Much of the caselaw cited by the Petitioner relates to circumstances in which the cases were dismissed with prejudice. *See*, *e.g.*, *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) (habeas petition dismissed as time-barred); *U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334, 337 (5th Cir. 2005) (final judgment rendered in favor of defendants); *Crutsinger v. Davis*, 936 F.3d 265, 267 (5th Cir. 2019) (habeas denied on the merits); *Hernandez v. Thaler*, 630 F.3d 420, 422 (5th Cir.) (habeas petition dismissed as time-barred did not benefit from subsequent changes in decisional law); and other cases clearly do not have the extraordinary circumstances shown here. *See Su v. Wilmington Tr., Nat'l Ass'n*, 839 F. App'x 884, 885 (5th Cir. 2021) (failure of attorney to appear not extraordinary). Moreover, this Court has found that changes in "*decisional law*" have been insufficient to constitute extraordinary circumstances. *Crutsinger v. Davis*, 936 F.3d 265, 267 (5th Cir. 2019). The reasoning behind that line of cases is that when a district court's interpretation of the law is correct at the time a ruling is rendered, it is not necessarily "extraordinary" that the decisional law might subsequently change. *See Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).

Petitioners present no caselaw suggesting that changes to the methods of execution and their availability do not present extraordinary circumstances. "In a

capital case, we must be particularly certain that the legal issues 'have been sufficiently litigated,' and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) citing *Shaw v. Martin*, 613 F.2d 487, 491 (4th Cir. 1980); *see also Williams v. State of Georgia*, 349 U.S. 375, 391 (1955) ("That life is at stake is of course another important factor in creating the extraordinary situation. The difference between capital and noncapital offenses is the basis of differentiation in law in diverse ways in which the distinction becomes relevant."). Under this Court's broad and equitable discretion to grant relief where justice requires it, this case should be reopened. *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) ("The broad language of clause (6) gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice.").

Petitioners' position is that Mr. Hoffman's suit challenging his execution method was mooted by the state's inability to execute him, was "premature" when the state had new methods but no protocol, Dist. Ct. ECF 337, at 11, but that once the state did announce a protocol fourteen days ago it was too late and he should have filed a new lawsuit "nearly a year" ago. *See* Pet., at 22. Petitioners are attempting to trap Jessie Hoffman in a Kafkaesque scenario in which he will be executed without any judicial review of the state's execution protocol. This Court should allow the lawsuit to proceed.

## IV. Mandamus is Not Appropriate Under these Circumstances.

Far from being a matter where the district court clearly abused its discretion and usurped judicial authority, this case involves the district court's discretionary grant of reopening of a lawsuit after dismissal without prejudice. Petitioners do not take the position that a 42 U.S.C. § 1983 lawsuit challenging their method of execution is inappropriate, but instead complain about the reopening of *this* suit. Allowing the current suit to proceed rather than starting anew would further the expeditious resolution of Plaintiff's claims.

The Petitioners have shown no irreparable injury, and indeed only Plaintiff Hoffman would suffer irreparable injury. The primary harm Appellants allege is: "*i.e.*, forcing Petitioners to participate in a procedurally improper method-of-execution challenge on the eve of a scheduled execution" Pet. at 29. Petitioners concede that Mr. Hoffman has a right to litigate the constitutionality of the newly announced gassing protocol they plan to utilize to put him to death on March 18, 2025. They would prefer him to do so in a new lawsuit, but that is not required under the law. The District Court's Order to reopen the instant case will not cause them irreparable harm. *Mr. Hoffman* is at risk of irreparable harm if this suit is not allowed to proceed, as he is the one with a fast-approaching execution date—"a bell that cannot be unrung." Pet. at 32.

Nor have Petitioners shown that no other adequate means exist to protect the Petitioners' stated concerns. This Court should accordingly decline to issue this extraordinary remedy as a matter of judicial economy and deference to the district court's exercise of reasonable discretion.

## CONCLUSION

In conclusion, Respondents respectfully request that this Court deny the Petitioners' request for mandamus.

Respectfully Submitted,

/s/ Cecelia Trenticosta Kappel
Cecelia Trenticosta Kappel
Loyola Center for Social Justice
7214 St. Charles Ave. Box 907
New Orleans, LA 70118
Tel: 504-861-5735
Email: ctkappel@defendla.org

Counsel for Respondents

## CERTIFICATE OF SERVICE

I, Cecelia Trenticosta Kappel, a member of the Bar of this Court and counsel for Respondents certify that, on February 24, 2025, a copy of the foregoing motion was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *Cecelia Trenticosta Kappel*
CECELIA TRENTICOSTA KAPPEL

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Cecelia Trenticosta Kappel, a member of the Bar of this Court and counsel for Plaintiffs-Respondents, hereby certify, pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A), 32(a)(5), and 32(a)(6), and Fifth Circuit Rule 32.3, that the foregoing motion is proportionately spaced, has a typeface of 14 points or more, and contains 4112 words.

/s/ *Cecelia Trenticosta Kappel*
CECELIA TRENTICOSTA KAPPEL

FEBRUARY 24, 2025