No. 25-30088

# In the United States Court of Appeals for the Fifth Circuit

IN RE GARY WESTCOTT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; AND DARREL VANNOY, IN HIS OFFICIAL CAPACITY AS WARDEN OF THE LOUISIANA STATE PENITENTIARY,

*Petitioners,*

---

On Petition for Writ of Mandamus from the
United States District Court for the Middle District of Louisiana
(Dick, J.)
No. 12-cv-796

---

## MOTION FOR RECONSIDERATION OF DENIAL OF MANDAMUS PETITION AND ADMINISTRATIVE STAY AS MOOT

---

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

MORGAN BRUNGARD
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Petitioners—as "governmental" parties—need not furnish a certificate of interested persons.

## MOTION FOR RECONSIDERATION

Pursuant to Federal Rule of Appellate Procedure 27, Petitioners respectfully file this motion for reconsideration of this Court's March 17 order denying the petition for mandamus and request for an administrative stay of the district court's February 21 order "as moot." ECF 34-3. They also respectfully request an immediate reinstatement of the administrative stay as the Court considers this motion and the mandamus petition.

Petitioners understand the Court's denial on mootness grounds to reflect the fact that this Court has now adjudicated Plaintiff Hoffman's method-of-execution challenge in his separately filed lawsuit. However, Plaintiff Hoffman is not the only Plaintiff in *this* case, and thus, the February 21 order—procedurally improper as it is—now reopens the case for untold future litigation regarding all Plaintiffs. Indeed, that is now happening. Just moments ago, all Plaintiffs filed a motion (attached) demanding that the Middle District order today's execution of Plaintiff Hoffman to be livestreamed and videotaped. Why? Because "Plaintiffs' claims will challenge the state's new nitrogen gas method, and what hap-

2

pens during Mr. Hoffman's execution will be probative evidence particularly in light of eyewitness accounts indicating something went terribly wrong during the Alabama executions." Mot.5.

That motion is baseless. But, as a procedural matter, it also should have never been filed because this case should not have been reopened in the first place.

As a result, Petitioners respectfully request that this Court immediately reinstate the administrative stay of the February 21 reopening order and reconsider its denial of the mandamus petition.

Respectfully submitted,

Dated:   March 18, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

MORGAN BRUNGARD
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Petitioners*

3

## CERTIFICATE OF SERVICE

I certify that on March 18, 2025, I filed the foregoing brief with the Court's CM/ECF system.

<em><u>/s/ J. Benjamin Aguiñaga</u></em><br>
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27 because it contains 252 words; and

(2) the typeface requirements of the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:　　March 18, 2025

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE HOFFMAN, et al., | Civil Action No. 12-796-SDD-EWD |
| Plaintiffs, | |
| v. | |
| BOBBY JINDAL, et al., | |
| Defendants. | |

EXECUTION SCHEDULED FOR MARCH 18, 2025

MEMORANDUM IN SUPPORT OF MOTION TO VIDEOTAPE AND/OR LIVESTREAM EXECUTION

Serious constitutional questions linger over Louisiana's untested nitrogen gas protocol. In this Court's decision in the Related Case, *Hoffman v. Westcott*, granting a preliminary injunction, this Court found that execution by nitrogen gas "poses a substantial risk of conscious terror and psychological pain." *See Hoffman v. Westcott, et al.*, No. 3:25-cv-00169-SDD-SDJ (M.D. La.), ECF 89 at 19.

This finding was made up of three components. First, hypoxia "produces a terror response." *Id.* at 15. "[T]he deprivation of oxygen to the lungs causes a primal urge to breathe and feelings of intense terror when inhalation does not deliver oxygen to the lungs." *Id.* at 17. *Given* the reservoir of air in the lungs, "it may take a number of minutes depending on the breathing volume [for nitrogen] to wash out all the oxygen that is remaining in the lungs." *Id*. at 15. Second, nitrogen hypoxia causes "emotional terror" and "severe psychological pain []] until the loss of consciousness." *Id.* at 17. Third, the conscious terror and sense of suffocation from nitrogen hypoxia can last up to three to five minutes. *Id.* at 18. In making this decision,

1

this Court credited Dr. Bickler's testimony, which was based in part on the media accounts of the four Alabama executions. Eyewitness accounts of all four Alabama executions by nitrogen gassing revealed that the prisoners experienced "conscious terror for several minutes, shaking, gasping, and other evidence of distress." *Id.* at 13.

In its appeal, the State asserted that this Court's findings regarding the Alabama executions was "astounding—both because Alabama courts have rejected such accounts as unreliable and because this district court refused to even acknowledge that across-the-board rejection." *Hoffman v. Westcott*, No. 25-70006 (5th Cir. Mar. 14, 2025), ECF 8-1 at 25.. The State pointed to an Alabama decision finding the eyewitness accounts "insufficiently reliable" because the movements could have been unconscious movements, and also could have been conscious movements before the gas started flowing. *Id*. at 26. The Fifth Circuit's decision overturning the injunction echoed the State's characterization of the Alabama executions as "successful[.]" *Hoffman v. Westcott*, No. 25-70006, 2025 WL 816734 (5th Cir. Mar. 14, 2025), ECF 54-1 at 2.

### A. This Court Should Allow the Execution to be Videotaped

That an execution is successful in killing does not mean it is constitutional. By all accounts, the Alabama executions have been cruel and unusual.[1] However, the Alabama courts relied upon by the State have discounted the media witnesses' accounts because the

---

[1] The Montgomery Advisor reported that Mr. Smith: "[A]ppeared to convulse and shake vigorously for about four minutes after the nitrogen gas apparently began flowing through his full-face mask in Alabama's death chamber. It was another two to three minutes before he appeared to lose consciousness, all while gasping for air to the extent that the gurney shook several times." Marty Roney, *Nitrogen gas execution: Kenneth Smith convulses for four minutes in Alabama death chamber*, Montgomery Advertiser, Jan. 25, 2024, https://www.montgomery advertiser.com/story/news/local/alabama/2024/01/25/four-minutes-of-convulsions-kenneth-smith-executed-withnitrogen-gas/72358038007/.

2

media did not know when the gas started flowing, and the media witnesses are not doctors trained to recognize signs of consciousness. Videotaping the execution for review by the parties and experts would avoid any problems posed by reliance on reporters for information.

Other courts have previously granted motions to video tape executions in similar circumstances. In *In re Thomas*, 155 F.R.D. 124, 126 (D. Md. 1994), the district court granted a prospective habeas petitioner's petition to videotape, pursuant to Rules 27 and 34, the gas execution of John Thanos for use in an anticipated Eighth Amendment challenge. Ex. 1. There, the court authorized counsel to videotape the entire execution, from the time Mr. Thanos was placed in the gas chamber to the time his body was removed from the chamber. *Id.* at 127. In *Fierro v. Gomez*, No. C-92-1482-MHP (N.D. Cal. Apr. 21, 1992), the court granted videotaping of another gas execution, because "Defendants have contested the reliability of eyewitness reports and recollections concerning the pain and suffering experienced by prisoners executed by lethal gas." Ex. 2.

Despite what every media witness and a member of a victim's family reported, the State insists that nothing went wrong in the Alabama executions. Given Defendants' discounting what numerous witnesses have reported happened during the Alabama executions, videotaping is required to assist in providing an accurate record of the next nitrogen gas execution. If Jessie Hoffman's execution resembles that of the Smith, Miller, Grayson, and Frazier executions, and that evidence is preserved by objective videotape, then Plaintiffs' claims will be made immeasurably stronger. Defendants are in total control of the ability to obtain or "destroy" this evidence. The evidence Plaintiffs seek to preserve is highly relevant to the central issue in this case and should be preserved.

Moreover, granting this request will "secure the just, speedy, and inexpensive determination of" this "action."[2] Everything that would be videotaped is already visible to the witnesses and Mr. Hoffman's spiritual advisor, and would not reveal the identities of anyone on the execution team.

This Court should order Defendants to permit undersigned counsel or their designee to videotape Mr. Hoffman's Execution. Counsel will provide the videotape to opposing counsel within 24 hours.

### B. This Court Should Order the Execution to be Publicly Livestreamed

Louisiana law does not provide for public executions. *See* La. R.S. § 15:569(B) ("Every execution shall be made in a room entirely cut off from view of all except those permitted by law to be in said room."). The secrecy attendant to modern executions violates the First, Eighth, and Fourteenth Amendments as well as La. Const. Art. III § 15. As the United States Supreme Court explained in *Kennedy v. Louisiana*:

> capital punishment is excessive when it is grossly out of proportion to the crime or it does not fulfill the two distinct social purposes served by the death penalty: retribution and deterrence of capital crimes.

554 U.S. 407, 441 (2008). Because Louisiana law provides for the hidden execution of defendants sentenced to death, it does not further the "public purposes of retribution and deterrence" but only diminishes whatever possible benefit society might receive from the inmate's death, and as such is totally without penological justification in that it results in the gratuitous infliction of suffering. *See Gregg*, 428 U.S. at 183. Justice Hughes opined on Sunday night that:

> I favor the death penalty as a deterrent. Those who would take life should bear in mind theirs may be taken as a consequence. Is the method humane? Is letting

---

[2] Fed. R. Civ. P. 1.

4

> babies freeze to death in Gaza humane? Harvesting organs from Uighurs? Let those with a clear conscience flip the switch.

*State v. Hoffman*, 25-00324 (La. 3/16/25); 2025 WL 825645 (Hughes, J., concurring). How is the death penalty to deter anyone if it is done in secret? Not only does the private imposition of the execution eliminate whatever deterrent value a death sentence might have, but it also prevents society from making an ongoing assessment of the appropriateness of that sentence as required by the Eighth Amendment. *See Trop v. Dulles*, 356 U.S. 86, 100–01 (1958) ("The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."). If Mr. Hoffman's death sentence is to be carried out under cover of darkness, his execution would violate the First, Eighth, and Fourteenth Amendments. Therefore, this Court should order the execution to be made public via livestream. Let the public see what our Government is doing to its citizens.

## CONCLUSION

Plaintiffs' claims will challenge the state's new nitrogen gas method, and what happens during Mr. Hoffman's execution will be probative evidence particularly in light of the eyewitness accounts indicating something went terribly wrong during the Alabama executions. Defendants persist in denying the reliability and believability of media eyewitness evidence, insisting the Alabama executions were "successful." To ensure highly relevant evidence is obtained and not "irretrievably lost," this Court should issue an order permitting the execution to be videotaped. Additionally, to "deter" the public from committing murder and allow the public to see what its Government is doing in its name, this Court should order the execution publicly livestreamed.

Dated: March 18, 2025

5

Respectfully submitted,

/s/ *Cecelia Trenticosta Kappel*
Cecelia Trenticosta Kappel, La. Bar No. 32736
Loyola Center for Social Justice
7214 St. Charles Ave. Box 907
New Orleans, Louisiana 70118
Tel: 504-861-5735
Email: ckappel@defendla.org

Samantha Bosalavage Pourciau, La. Bar No. 39808
Promise of Justice Initiative
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
Sbosalavage@defendla.org

*Counsel for Plaintiffs Anthony Bell, Daniel Blank, Henri Broadway, Nathaniel Code, Jessie Hoffman, Daniel Irish, Jason Reeves, Willie Tart, James Tyler, and Todd Wessinger*

6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using CM/ECF on this 18th day of March, 2025. Notice of this filing as generated by the electronic filing system constitutes service of the filed document on counsel of record for Defendants.

          /s/ *Cecelia Trenticosta Kappel*
          Cecelia Trenticosta Kappel